In the Matter of the Estate of Louise E. F. Buehler, Deceased.

Surrogate's Court, New York County, December 14, 1945.

*Shearman & Sterling & Wright* for Irving McKesson and another, as administrators, for the motion.

*William Bradford Roulstone* and *James N. Vaughan* for Carolyn B. Siener and another, in opposition.

DELEHANTY, S. Defendants in an action transferred here by the Supreme Court move for judgment on the pleadings. Prior to the making of the order of transfer by the Supreme Court defendants sought and procured from this court an order consenting to such transfer. At the time such consent was given there was pending in this court an accounting by the administrators of deceased. The order of this court which gave assent to the transfer directed that when and if the action were transferred here by the Supreme Court it should be consolidated with such accounting proceeding.

Before discussion can be had respecting the merits of the motion, it is necessary to dispose of a controversy between the parties as to the nature of the action transferred and as to the pertinence of the orders of consent and of transfer of the action to solution of this primary dispute. Plaintiffs say that their complaint states a cause of action in equity. Defendants maintain that it has been made the law of the case that the action is one on the law side and that it is brought to recover damages for breach of the contract alleged in the complaint. They argue that the only statutory authority for a transfer to this court of an action pending in the Supreme Court is found in subdivision 9 of section 40 of the Surrogate's Court Act, which limits such powers of transfer to an " action at law " (*Matter of Pedrette,* 153 Misc. 106). The point is urged strongly by defendants who support their motion for judgment on the pleadings by reference to a line of decisions made in actions at law.

Had the parties formulated this controversy as to the nature of the action when the motion was first made to procure the consent of this court to the transfer or when the motion was made in the Supreme Court for the order effecting the transfer a ruling on the nature of the action might have become necessary but both parties were in agreement that the action should

be transferred to this court and consolidated with the accounting proceeding then and now pending here. Not only did defendants procure the consent of this court but they also procured the order of transfer. The first order was made on the express assent of plaintiffs; the second on their default. Point is made of the fact that in the respective orders are found recitals describing the action as one at law. The point was not litigated, however, and neither court was called on to make an express determination respecting the nature of the action. It seems clear in such circumstances that substantive rights cannot be destroyed or lessened by recitals of unlitigated matters in preliminary orders.

The jurisdiction of this court to hear and determine the issues between the parties could not be challenged successfully. The judicial settlement of the account of the administrators is before the court. In that proceeding a decree is sought directing distribution of all of the net assets of the estate to the administrators individually in their character as distributees of deceased. The claim of plaintiffs must be determined before the net estate can be ascertained. In the accounting proceeding the court has jurisdiction of the *res* and of all the parties. Under section 40 of the Surrogate's Court Act, this court has the right " to try and determine all questions, legal or equitable, arising between any or all of the parties to any proceeding, or between any party and any other person having any claim or interest therein who voluntarily appears in such proceeding * * * as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter by such order or decree as justice requires." (See *Matter of Raymond v. Davis,* 248 N. Y. 67.)

It is now the declared policy of the Supreme Court not to retain jurisdiction of a controversy when the Surrogate's Court has concurrent jurisdiction, unless special facts and circumstances require retention of the issue (*Noll* v. *Ruprecht,* 256 App. Div. 926, affd. 282 N. Y. 598; *Doscher* v. *Murphy,* 261 App. Div. 263). The transfer of the action to this court by the Supreme Court was consonant with the policy stated in the cited cases. Moreover, the parties are of full age and competent to bind themselves by stipulation or acquiescence (*Matter of Malloy,* 278 N. Y. 429). The power of the Supreme Court to transfer the action to this court cannot now be questioned. If an express authority for such transfer is not found in the inherent, general and plenary powers of the Supreme Court, it would

in any case be validated by the express consent and acquiescence of the parties (*Matter of Malloy, supra*). The parties are not attempting to confer upon this court a jurisdiction which it lacks. They assented to the consolidation in this court of all issues relating to the *res* over which this court has undoubted jurisdiction. Accordingly the court holds that under the circumstances here present the orders transferring the action did not determine judicially that the action is one at law and so proceeds to consider the merits of the motion unembarrassed by any prior determination as to the nature of the action pleaded.

Plaintiffs allege that in November, 1917, their father, Julius Buehler, entered into an oral agreement with their stepmother, whose estate is here under administration, providing that he would name her as his sole legatee in consideration of her contemporaneous promise that she would bequeath all of her property to plaintiffs. The plaintiffs further allege that after the making of this agreement and in pursuance of it their father executed on November 9, 1917, a will leaving his entire estate to his wife. Plaintiffs further allege that this will was left unaltered by their father until his death on April 29, 1918. They say their stepmother presented the will for probate and procured its admission, that she qualified as executrix under the will and that she took title, first as executrix and then beneficially, to all the assets of plaintiffs' father. The complaint further alleges that deceased failed to perform the contract on her part and seeks judgment directing that the net estate of deceased be paid over to plaintiffs.

In their amended answer defendants deny the contract pleaded by plaintiffs and assert three affirmative defenses thereto. These affirmative defenses respectively say that the cause of action must fail because the contract alleged is not in writing as required by section 259 of the Real Property Law (agreement for the sale of real property or an interest therein), nor as required by section 259-a of the Real Property Law (contract to devise real property or an interest therein) nor as required by subdivision 7 of section 31 of the Personal Property Law (contract to bequeath property or to make a testamentary provision). The motion is pressed on the basis of these affirmative defenses. Before giving consideration to them some note should be made of the subject matter involved.

The account now before this court for settlement reports deceased as having left personal property valued in excess of $1,000,000 and real property appraised for $12,000. The realty was held by Julius Buehler and deceased as tenants by the

entirety and passed to deceased by operation of law when Julius Buehler died. The property which passed under the will of Julius Buehler was not comparable in worth to the estate left by deceased, though it is said that the disparity was not so great at the time of the alleged contract as it now appears to be. Since the contract which plaintiffs plead is an entire contract whereby they seek recovery of all of deceased's property it is obvious that the subject matter of the action consists both of real and personal property. The law is settled that an entire contract relating to both real and personal property is not valid as to the personalty if it is void under the Statute of Frauds in respect of the realty (*George* v. *Dobson,* 261 App. Div. 447, affd. 287 N. Y. 675; *Thayer* v. *Rock,* 13 Wend. 53; *De Beerski* v. *Paige,* 36 N. Y. 537; Restatement, Contracts, § 221; 2 Williston on Contracts [Rev. ed.], § 532).

Without discriminating among the defenses pleaded under the Statute of Frauds plaintiffs assert that it is not applicable here because of full performance on the part of their father of all of his obligations under the pleaded contract. The doctrine of part performance is a creation of equity exclusively (*Walter* v. *Hoffman,* 267 N. Y. 365; *Burns* v. *McCormick,* 233 N. Y. 230; *Phalen* v. *United States Trust Co.,* 186 N. Y. 178, 184; *Wheeler* v. *Reynolds,* 66 N. Y. 227, 236; 5 Pomeroy's Equity Jurisprudence [2d ed.], § 2240) and is usually applied only in an action to compel specific performance of contracts for the sale of lands (Restatement, Contracts, § 197, Comment (a); 2 Williston on Contracts [Rev. ed.], § 533; Real Property Law, § 270; *Neverman* v. *Neverman,* 254 N. Y. 496, 500). It is not every act of part performance however that will move a court of equity to specifically enforce an oral contract for the sale of real property. The Court of Appeals has laid down the test that is to measure the sufficiency of the part performance. '' There must be performance ' unequivocally referable ' to the agreement, performance which alone and without the aid of words of promise is unintelligible or at least extraordinary unless as an incident of ownership, assured, if not existing. ' An act which admits of explanation without reference to the alleged oral contract or a contract of the same general nature and purpose is not, in general, admitted to constitute a part performance ' (*Woolley* v. *Stewart,* 222 N. Y. 347, 351). What is done must itself supply the key to what is promised. It is not enough that what is promised may give significance to what is done.'' (*Burns* v. *McCormick,* 233 N. Y. 230, 232, *supra; Neverman* v. *Neverman,*

254 N. Y. 496, *supra; Walter* v. *Hoffman,* 267 N. Y. 365, 369, *supra.*) Tested by these rules the act of part performance upon which the plaintiffs rely is wholly insufficient to warrant a court of equity in exercising its dispensing power. Their father executed a will leaving all of his property to his wife. Standing alone that act gives not the slightest indication of any precedent agreement. Intrinsically such an act of a husband could not be said to be necessarily referable to the oral agreement alleged (*Matter of Goldberg,* 275 N. Y. 186).

Consideration of the individual defenses under the statute being necessary, the court turns first to the one which invokes section 31 of the Personal Property Law. The legislation which gave rise to that section became effective in April, 1933 (L. 1933, ch. 616). The contract alleged here is said to have been made in 1917. The 1933 amendment to section 31 of the Personal Property Law has no retroactive effect and does not apply to contracts in existence at the date of its passage (*Ralph* v. *Cronk,* 266 N. Y. 428; *Wahl* v. *Seyfried,* 25 N. Y. S. 2d 653, affd. 260 App. Div. 993, affd. 285 N. Y. 820). Since the new section 259-a of the Real Property Law was part of the legislative program (L. 1933, ch. 574) which resulted in the amendment to section 31 of the Personal Property Law in 1933 (*Matter of Ditson,* 177 Misc. 648, 649), the authorities just cited would be decisive in respect of any new change in the law wrought by section 259-a of the Real Property Law. However, section 259-a of the Real Property Law has been held to be merely a codification of the law as it existed prior to 1933 (*Hammond* v. *Hammond,* 264 App. Div. 322, 324). It has long been the established law of this State that an oral contract to devise real property is within the operation of section 259 of the Real Property Law which declares void oral contracts for the sale of realty (*Hammond* v. *Hammond, supra; George* v. *Dobson,* 261 App. Div. 447, *supra; Burns* v. *McCormick,* 233 N. Y. 230, *supra; Canute* v. *Minor,* 232 App. Div. 325, affd. 258 N. Y. 558).

Recognizing the existence of the body of case law just stated plaintiffs seek to avoid the remaining separate defense by saying that a court of equity may impress a trust in their favor. The Statute of Frauds does not prevent the recognition of a constructive or secret trust (*Foreman* v. *Foreman,* 251 N. Y. 237; *Sinclair* v. *Purdy,* 235 N. Y. 245; *Harrington* v. *Schiller,* 231 N. Y. 278). In such a situation the result is attained not through the exercise of the dispensing power of a court of equity but because of an exception which has wrought itself by construction

into the body of the statute (*Foreman* v. *Foreman, supra*, p. 240; 4 Pomeroy's Equity Jurisprudence [5th ed.], § 1058a). A constructive trust does not inevitably result from the payment of consideration alone. It is imposed by a court of equity as a consequence of payment in connection with other existing equities.

The principle is firmly established in our jurisprudence that where one obtains a bequest or devise of property upon his representation that he would devote it to the use of one who would otherwise be an object of the testator's bounty and he thereafter refuses to put it to the use promised, a court of equity will enforce the obligation by impressing a trust upon the property in favor of the intended beneficiary (*Amherst College* v. *Ritch,* 151 N. Y. 282; *Matter of O'Hara,* 95 N. Y. 403; *Edson* v. *Bartow,* 154 N. Y. 199, 215, 219; 4 Pomeroy's Equity Jurisprudence [5th ed.], § 1054; 1 Scott on Trusts, § 55; Restatement, Trusts, § 55; Costigan on Constructive Trusts, 28 Harv. L. Rev. 237, 251 *et seq.*) In *Golland* v. *Golland* (84 Misc. 299, 306) the then Mr. Justice CARDOZO stated the rule thus: " The principle is now a settled one in this state, that where a devise is induced by the promise, express or implied, of the devisee, to devote the gift to a lawful purpose, a secret trust is created; and equity will compel him to apply the property in accordance with the promise by force of which he procured it. * * * A court of equity in such cases exerts its power, not merely because there has been a breach of contract, but because the promise has been used as an instrument to induce the promisee to part with his property, so that the retention of it by the promisor in violation of the promise would result in an unjust enrichment and would constitute a fraud. It is not the promise only, nor the breach only, but the promise and the breach combined with the extortion of property from the owner upon the faith of the engagement, which puts the court in motion.''

As plaintiffs have pleaded their cause they ask the court to impress a trust upon all the property which deceased owned at the time of her death. By their pleading they assert that she was a trustee for their benefit not only of the property which she obtained from her husband but as well of all the property which she had from other sources, regardless of the time when she became possessed of it. Under the authorities it is clear that plaintiffs are not entitled to so broad relief. It may be that a court of equity could and would impress a trust upon the property or the proceeds of property obtained by

deceased from her husband upon the faith of the alleged promise. Such a trust would adhere to the property in the hands of deceased's administrators (*Farmers' Loan & Trust Co.* v. *Mortimer*, 219 N. Y. 290, 295; *Matter of Kidd*, 188 N. Y. 274, 280; *Phalen* v. *United States Trust Co.*, 186 N. Y. 178 *supra; Seaver* v. *Ransom*, 224 N. Y. 233). But it is also clear that equity would not be warranted under the cited authorities in impressing a trust upon all of deceased's property (*Rastetter* v. *Hoenninger*, 214 N. Y. 66; *Leary* v. *Corvin*, 181 N. Y. 222; *Seaver* v. *Ransom*, *supra*). In *Rastetter* v. *Hoenninger* (*supra*) the appeal involved joint and mutual wills executed by a husband and wife. The argument was there made that each became during his lifetime the trustee of his own property for the benefit of the other. The wife predeceased her husband. The Court of Appeals said (p. 74): '' Each, during his life, remained the absolute owner of his own with all the rights of an owner. Certainly nothing short of plain and express words to that effect should suffice in such a case to limit the use, or to impress a trust upon, the property of each during his own life. * * * Upon the death of the wife, the husband undoubtedly became trustee of her personal estate for the remaindermen ''. The limitations of equity in impressing a constructive trust were similarly pointed out by the Court of Appeals in *Sinclair* v. *Purdy* (235 N. Y. 245, 253) where it was said: '' Distinctions are, indeed, to be drawn between cases where property is parted with on the faith of an oral promise, and cases where one without an interest in property before obtains a promise that an interest will be given to him thereafter (*Leary* v. *Corvin*, 181 N. Y. 222, 229; *cf. Amherst College* v. *Ritch*, 151 N. Y. 282).''

Here plaintiffs' complaint alleges a series of acts and transactions and ultimate facts and then concludes with a prayer that plaintiffs be adjudged the owner of all of deceased's property and that plaintiffs have '' such other and further relief as the court may deem just ''. In an action on the equity side the fact that a prayer for specific relief is too broad does not in itself compel dismissal of the complaint. Once a court of equity has jurisdiction of a cause it has power to determine all matters at issue and to grant complete relief (*Ferguson* v. *Village of Hamburg*, 272 N. Y. 234, 239; *Matter of People* [*Russian Reinsurance Co.*], 255 N. Y. 415, 423; *Carpenter* v. *Osborn*, 102 N. Y. 552, 561; *Bonham* v. *Coe*, 249 App. Div. 428, affd. 276 N. Y. 540; *Spector* v. *Biow Co., Inc.*, 241 App. Div. 719). '' Equity will administer such relief as the exigencies of the case demand at the close of the trial.'' (*Bloomquist* v. *Farson*,

222 N. Y. 375, 380.) The rule is stated by the Appellate Division of the Supreme Court in *Bonham* v. *Coe* (*supra*), p. 439: "But this is an action in equity, and equity, once having acquired jurisdiction of a case, will administer all the relief which the facts and the nature of the controversy demand. The fact that the specific relief demanded is inadequate to the relief about to be granted will not prevent the court from granting a proper judgment, where, as here, the complaint demands 'such other and further relief as shall be just and proper'. A prayer for general relief is as broad as the equitable powers of the court, and under it the court may properly shape its decree in accordance with the equities of the case."

The court being under the duty to deny the broad relief which plaintiffs seek, there is presented the question whether it will attempt to act under the prayer for other and further relief. It has concluded that it should not do more than give leave to plaintiffs to plead over. They have here pleaded an entire contract and under it have sought relief which the court cannot grant. Though they demand a jury trial in the Supreme Court as of right their pleading actually states a cause of action in equity and they here assert that such is their action. The contention of defendants that the action is one at law points up the possible differences in viewpoint respecting the form for demanding the more limited relief to which plaintiffs may possibly be entitled. There are aspects of the facts alleged which may permit the institution of a common-law action on the theory of unjust enrichment (*Williams* v. *Fitch*, 18 N. Y. 546; Restatement, Restitution, § 160, Comment e; 3 Scott on Trusts, § 462.2). It may be that the facts will support an action on the equity side to enforce a trust (Restatement, Restitution, § 160; Costigan on Constructive Trusts, 28 Harv. L. Rev., 236, 251 *et seq.*). Plaintiffs should be allowed an opportunity to determine whether they will seek the further and other relief which they demand in their present complaint but they should be required to state more explicitly what relief they seek, if they desire to go further.

The motion to dismiss the complaint is granted but with leave to plaintiffs to plead over in twenty days if so advised. Submit, on notice, order accordingly.